**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 14 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KEVIN CHARLES EATON,

Defendant-Appellant.

No. 00-1276

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 99-CR-329-N)

Sean Connelly, Assistant United States Attorney, District of Colorado, (Thomas
L. Strickland, United States Attorney, District of Colorado, with him on the
briefs), Denver, Colorado, for Plaintiff-Appellee.

Wade H. Eldridge, Wade H. Eldridge, P.C., Denver, Colorado, for Defendant-
Appellant.

Before **BRISCOE, ANDERSON**, and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

I. INTRODUCTION

Defendant Kevin C. Eaton was convicted in a jury trial for unlawfully possessing three unregistered explosive devices in violation of 26 U.S.C. § 5861(d). During the trial, the district court rejected Eaton's assertion that the circumstances of his case were analogous to those in *United States v. Dalton*, 960 F.2d 121 (10th Cir. 1992). The district court therefore denied Eaton's motion for judgment of acquittal and, during the jury instruction conference, rejected his proposed instruction based on *Dalton*. Eaton challenges these rulings. He also challenges several aspects of his sentence. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms**.

## II. BACKGROUND

As a member of a motorcycle club, Eaton frequently attended motorcycle rallies which brought several such clubs together throughout Colorado. He became friendly with a member of a different motorcycle club who he knew as Bo, an undercover identity assumed by Special Agent Blake Boteler. Special Agent Boteler had infiltrated a motorcycle club in an attempt to uncover evidence of illegal firearm and narcotics trafficking in the outlaw motorcycle club community.[1] Both Eaton and Special Agent Boteler served as the enforcers for their respective motorcycle clubs.

---

[1] These clubs describe themselves as outlaw motorcycle clubs because they "live outside the law."

During a conversation between the two men at a motorcycle rally, Eaton expressed an interest in obtaining blasting caps. Special Agent Boteler indicated that he would look into acquiring some from a friend in New Mexico. During the same conversation, Boteler informed Eaton he was interested in obtaining three pipe bombs and asked Eaton if he would make them for him. Special Agent Boteler indicated to Eaton that he needed the bombs to use on a car. Eaton agreed to build the pipe bombs.

Shortly thereafter, Special Agent Boteler went to Eaton's house to pick up the pipe bombs. Eaton gave Boteler three constructed pipe bombs and four plastic bags filled with smokeless powder to put in the pipes. Special Agent Boteler asked Eaton to explain the most effective way to blow up a car. Eaton responded by telling him to place the bombs near the gas tank. During the course of their meeting, Special Agent Boteler indicated that the bombs would be used on someone who deserved it. Eaton acknowledged that Boteler's planned actions were felonious.

Eaton was subsequently indicted for unlawfully possessing three unregistered explosive devices in violation of 26 U.S.C. § 5861(d). Following a jury trial, Eaton was found guilty of the charge. The district court sentenced Eaton to fifty-seven months imprisonment. In calculating Eaton's sentence, the district court enhanced his base offense level by one level for the number of

devices used in the offense, two levels for an offense involving a destructive device, and four levels for the transfer of a firearm with knowledge that it would be used in connection with another felony offense. The district court refused to adjust Eaton's sentence downward for his alleged acceptance of responsibility.

On appeal, Eaton challenges the district court's denial of his motion for judgment of acquittal and the district court's refusal to give his proposed jury instruction. Eaton also challenges the district court's calculation of his sentence under the United States Sentencing Guidelines.

## III. DISCUSSION

### A. Motion for Judgment of Acquittal and Proposed Jury Instruction

Eaton claims the district court should have granted his motion for judgment of acquittal or, in the alternative, should have given his proposed jury instruction pursuant to *United States v. Dalton*, 960 F.2d 121 (10th Cir. 1992). A district court's denial of a motion for judgment of acquittal is reviewed *de novo*. *See United States v. Schluneger*, 184 F.3d 1154, 1158 (10th Cir.1999). Although this court reviews a district court's refusal to give a particular jury instruction for abuse of discretion, we examine the instructions as a whole *de novo* to determine whether the instructions adequately state the governing law. *See United States v. Pacheco*, 154 F.3d 1236, 1238 (10th Cir. 1998).

In *Dalton*, this court held that due process barred a defendant's conviction under a statute that punished his failure to register a machinegun when the registration of a machinegun was precluded by law. *See* 960 F.2d at 122. Eaton analogizes his case to *Dalton*, claiming it was impossible for him to register a pipe bomb with the ATF and he therefore cannot be punished for his failure to comply with the registration statute. *Dalton* involved a situation in which a particular statute criminalized possession of a machine gun, thereby making gun registration legally impossible. *See id.* at 122-23; *see also* 18 U.S.C. § 922(o)(1) ("[I]t shall be unlawful for any person to transfer or possess a machinegun."). There is no similar statute criminalizing the possession of a destructive device such as a pipe bomb. Without such a statute, it was not legally impossible for Eaton to register the pipe bomb. *See United States v. McCollom*, 12 F.3d 968, 971 (10th Cir. 1993). He could have imprinted a serial number on the pipe bomb and attempted to register it with the ATF. Whether the ATF would have accepted the pipe bomb for registration does not bear on the issue of legal impossibility. *See id.* Thus, Eaton was not deprived of due process.[2]

B. Sentencing Issues

Eaton raises four issues on appeal related to the sentence imposed by the

---

[2] Eaton relies on his assertion that the pipe bombs could not be registered in order to support a Fifth Amendment claim. Because Eaton was not legally prohibited from registering the pipe bombs, his claim fails.

district court. Eaton claims the district court erred by (1) refusing to grant him a two-level downward adjustment pursuant to § 3E1.1(a) of the Sentencing Guidelines for acceptance of responsibility, (2) subjecting him to a four-level enhancement pursuant to § 2K2.1(b)(5) of the Sentencing Guidelines for unlawful transfer of a firearm with reason to believe it would be used in connection with another felony offense, (3) rejecting his claim that the government engaged in outrageous conduct, and (4) failing to submit to the jury questions of fact that increased his sentence in contravention of the United States Supreme Court's declaration in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). This court reviews the district court's legal conclusions under the Sentencing Guidelines *de novo* and its factual findings for clear error, affording great deference to the district court's application of the Guidelines to the facts. *See United States v. Janusz*, 135 F.3d 1319, 1324 (10th Cir. 1998); *see also* U.S.S.G. § 3E1.1, cmt. n.5. Constitutional challenges to a sentence are also reviewed *de novo*. *See United States v. Jones*, 213 F.3d 1253, 1261 (10th Cir. 2000).

*(1) Acceptance of Responsibility*

Eaton challenges the district court's refusal to apply a two-level reduction to his sentence for acceptance of responsibility. At trial, Eaton asserted an entrapment defense. As the district court correctly noted, an assertion of entrapment as a defense does not bar a defendant from receiving a two-level

-6-

reduction for acceptance of responsibility. *See United States v. Garcia*, 182 F.3d 1165, 1172 (10th Cir. 1999). Eaton, however, bears the burden of demonstrating an "affirmative acceptance of personal responsibility for his criminal conduct." *United States v. McAlpine*, 32 F.3d 484, 489 (10th Cir. 1994) (quotation omitted).

When a defendant is convicted at trial, a sentencing court's determination that he has accepted responsibility is based primarily on pre-trial statements and conduct. *See* U.S.S.G. § 3E1.1, cmt. n.2. In this case, the district court indicated that it was not aware of any pretrial statements or conduct by Eaton that would support a determination that Eaton accepted responsibility for the crime of conviction. The district court thus concluded that the reduction was not merited. Eaton makes no claim that he ever made pre-trial statements or engaged in pre-trial conduct that would suggest he accepted responsibility for the crime of conviction. Eaton simply claims he deserved the reduction because he testified truthfully at trial about making devices that, when taken apart and put back together with gun powder, were pipe bombs. It is clear the district court did not believe that Eaton met his burden of demonstrating an affirmative acceptance of personal responsibility. Bearing in mind this court's deference to the sentencing judge's determination, we cannot conclude that the district court's factual findings were clearly erroneous. Thus, a two-level reduction was not warranted.

*(2) Transfer of Firearm in Connection with Another Felony*

The district court imposed a four-level enhancement pursuant to § 2K2.1(b)(5) of the Sentencing Guidelines, which provides for such an adjustment if a defendant "possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5). The term firearm includes destructive devices such as pipe bombs. *See* 18 U.S.C. § 921(a)(3)(D); *id.* § 921(a)(4)(A)(i). A felony offense includes any federal, state, or local offense punishable by imprisonment for a term exceeding one year. *See* U.S.S.G. § 2K2.1, cmt. n.7. The district court found that Eaton's testimony supported "an inference of knowledge that the pipe bombs had the intended use of feloniously destroying a car and, at a later point in time, that they had the intended use of homicide." Eaton claims that because pipe bombs have no purpose other than blowing things up, the potential to commit a felony offense is always present when one possesses such a destructive device. Thus, Eaton argues, the commission of a felony offense such as arson or murder is coincidental to the bombs and not separate from their intended use and the enhancement is therefore not warranted.[3]

---

[3] Eaton also suggests the enhancement might not apply because the destructive devices were never used to commit a separate crime. Although Eaton later appears to dismiss his own argument, it is worth noting the law on this point. Even if a separate felony is never committed, a four-level enhancement is appropriate if the destructive device had the potential to facilitate a separate

The only authority Eaton cites to support his claim is *United States v. Gomez-Arrellano*, 5 F.3d 464, 466-67 (10th Cir. 1993). Eaton's reliance on *Gomez-Arrellano*, however, is misguided. *Gomez-Arrellano* does not stand for the proposition that because felony offenses are coincidental to certain types of weapons, a sentence enhancement under § 2K2.1(b)(5) is not appropriate. *Gomez-Arrellano* prohibits the § 2K2.1(b)(5) enhancement if possession of a firearm is merely coincidental to a separate offense. *See id.* If this court accepts Eaton's argument, a sentence enhancement under § 2K2.1(b)(5) would never be permissible in connection with a conviction for any crime involving a destructive device. This is not the rule. The mere fact that a destructive device has the potential to facilitate a felony does not exempt the application of § 2K2.1(b)(5).

To the extent that Eaton challenges the district court's application of § 2K2.1(b)(5) to the facts of this case, this court finds no error in the imposition of the four-level enhancement. Eaton testified that he was aware Special Agent Boteler wanted to use the pipe bomb to blow up a car. He even instructed the agent on the most effective way to blow it up by putting the bomb underneath the gas tank. Eaton's own testimony plainly indicates that he had reason to believe the bomb would be used in connection with another felony offense.

---

felony offense. *See United States v. Bunner*, 134 F.3d 1000, 1006 (10th Cir. 1998).

Eaton also claims the imposition of the four-level enhancement constitutes impermissible double counting because the district court already imposed a two-level enhancement pursuant to § 2K2.1(b)(3) of the Sentencing Guidelines. Impermissible double counting occurs when the same conduct of the defendant is used to support separate increases under different enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes. *See United States v. Flinn*, 18 F.3d 826, 829 (10th Cir. 1994).

Section 2K2.1(b)(3) provides for a two-level enhancement if the offense involved a destructive device. *See* U.S.S.G. § 2K2.1(b)(3). Section 2K2.1(b)(5) provides for a four-level enhancement if the defendant possessed or transferred a firearm, including a destructive device, with reason to believe that it would be used in connection with another felony offense. *See* U.S.S.G. § 2K2.1(b)(5). Despite Eaton's contentions to the contrary, these provisions serve distinct purposes. Whereas § 2K2.1(b)(3) provides an enhancement for the mere involvement of a destructive device, § 2K2.1(b)(5) focuses on the defendant's knowledge that the device will be used in connection with a separate felony offense. The facts in any given case may warrant a sentence enhancement under § 2K2.1(b)(3) and not § 2K2.1(b)(5). Because the provisions serve distinct purposes, the district court's enhancement of Eaton's sentence under both § 2K2.1(b)(3) and § 2K2.1(b)(5) did not constitute double counting.

*(3) Alleged Outrageous Governmental Conduct*

Eaton claims the government engaged in such outrageous conduct that the district court should have disregarded the Sentencing Guidelines and not calculated his sentence based on the involvement of three pipe bombs or his knowledge that the bombs would be used for a separate felony. Section 2K2.1(b)(1)(A) of the Sentencing Guidelines enhances a defendant's base level offense by one level if the offense involves three or four firearms. *See* U.S.S.G. § 2K2.1(b)(1)(A). As noted above, § 2K2.1(b)(5) enhances a defendant's base level offense for transferring a firearm with knowledge that it will be used in connection with a separate felony. *See* U.S.S.G. § 2K2.1(b)(5). Eaton suggests the government agent asked him to produce three pipe bombs and informed him that using them on a car was a felony simply to increase his potential penalty at sentencing.

A defendant must overcome a very high threshold to establish outrageous governmental conduct. *See United States v. Lacey*, 86 F.3d 956, 964 (10th Cir. 1996). The challenged conduct must be so shocking, outrageous, and intolerable that it offends the universal sense of justice. *See United States v. Mosley*, 965 F.2d 906, 910 (10th Cir. 1992). The undercover agent's behavior does not rise to this level. Eaton was not coerced nor reluctant to produce three pipe bombs for Special Agent Boteler. *Cf. United States v. Staufer*, 38 F.3d 1103, 1105, 1108

-11-

(9th Cir. 1994) (remanding for resentencing due to sentencing entrapment based on fact that defendant sold large quantity of drugs due to coercion from government agent).[4] Eaton acknowledged that using the bomb to blow up a car was a felony and even explained the most effective way to carry out this act. Accordingly, the district court properly rejected Eaton's outrageous governmental conduct claim.

*(4) Apprendi Claim*

Eaton claims that because the jury did not make factual determinations with regard to the sentence enhancements under § 2K2.1(b)(1)(A) and § 2K2.1(b)(5), he should be resentenced based only on the elements decided by the jury in light of the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Because Eaton's fifty-seven month sentence was not above the maximum term for the crime of conviction, *Apprendi* is not implicated. *See United States v. Heckard*, 238 F.3d 1222, 1235 (10th Cir. 2001) (holding that no *Apprendi* error exists when a defendant's sentence falls below the statutory maximum); *see also* 26 U.S.C. § 5871 (providing a ten-year imprisonment maximum for a violation of 26 U.S.C. § 5861(d)). Thus, Eaton's claim is without merit.

---

[4] "Outrageous governmental conduct" is the same concept as "sentencing entrapment." *See United States v. Lacey*, 86 F.3d 956, 963 & n.5 (10th Cir. 1996).

## IV. CONCLUSION

For the foregoing reasons, the district court is **AFFIRMED**.