**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas L. BROWN, Sr., Defendant–
Appellant.**

No. 03–8073.

United States Court of Appeals,
Tenth Circuit.

April 29, 2004.

Matthew H. Mead, U.S. Attorney, Office of the United States Attorney, Cheyenne, WY, Kerry J. Jacobson, Office of the United States Attorney, Lander, WY, for Plaintiff–Appellee.

Lisa Barrett Quast, Cheyenne, WY, for Defendant–Appellant.

Before BRISCOE, McKAY, and HARTZ, Circuit Judges.

## ORDER AND JUDGMENT[*]

HARTZ, Circuit Judge.

Defendant Thomas L. Brown pleaded guilty to assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6) and 1153(1). He now appeals his sentence, arguing that the district court improperly increased the offense level based on the use of a dangerous weapon—shod feet—and based on the degree of injury suffered by the victim. Exercising jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

On November 7, 2002, Defendant, Forrest Duran, Baudelio Gutierrez, and John Paul "J.P." Brown were drinking and driving around the Wind River Indian Reservation. Defendant and J.P. Brown got into an argument and Defendant began punching Brown. Duran, who was driving, then pulled the car over to the side of the road. Once the car was stopped, Defendant got out of the car, pulled Brown onto the ground, and continued to beat him until he was stopped by Duran.

J.P. Brown was eventually treated by Dr. Joseph Sramek. Sramek reported to Federal Bureau of Investigation Agent Paul Swenson that Brown had lost vision in his right eye as a result of the beating, and that it was unlikely he would regain the vision.

At the sentencing hearing Swenson testified that he had interviewed J.P. Brown at the hospital where he was treated. Although Brown was taking medication, the hospital staff informed him that Brown would be able to answer questions coherently. According to Swenson, Brown said that he had been drinking on the day of the assault and that Defendant had kicked him with shod feet. Swenson also testified that he had interviewed Duran, who admitted that he had been drinking on the day of the incident but said he did not drink as much as the others because he was driving. Swenson testified that Duran told him that Defendant had kicked J.P. Brown with shod feet.

Agent Swenson also interviewed Defendant. Although Defendant did not admit to Swenson that he had kicked J.P. Brown, Defendant did say that he was wearing steel-toed boots on the day of the assault and that those boots were the only pair of shoes that he owned. DNA testing on the boots about two months after the assault did not detect any blood.

An affidavit of Dr. Sramek was presented at the hearing. In it he stated that he could not "definitely determine whether a fist or a tennis shoe caused [J.P. Brown's] injury; however, either would have been

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

adequate to cause this type of injury." R. Vol. 1, Doc. 41 at 2. With regard to Brown's vision, Dr. Sramek stated that because Brown had not sought follow-up care, he did not know whether his vision had returned. According to Sramek, he "initially believed that the loss of vision may be permanent," but considered it "possible that his vision could have returned." *Id.*

At the close of the hearing the district court applied a five-level enhancement under U.S.S.G. § 2A2.2(b)(3)(E), concluding that J.P. Brown's injuries should be categorized as falling in between "Serious Bodily Injury," U.S.S.G. § 2A2.2(b)(3)(B), and "Permanent or Life–Threatening Bodily Injury," U.S.S.G. § 2A2.2(b)(3)(C). The court also concluded that a four-level enhancement under U.S.S.G. § 2A2.2(b)(2) was warranted in light of Defendant's use of steel-toed boots—a dangerous weapon—during the assault. Defendant now asserts that both enhancements were improper.

## II. DISCUSSION

"This court reviews the district court's legal conclusions under the Sentencing Guidelines *de novo* and its factual findings for clear error, affording great deference to the district court's application of the Guidelines to the facts." *United States v. Eaton*, 260 F.3d 1232, 1237 (10th Cir.2001). "The government bears the burden of proof as to any findings necessary to support a sentence enhancement." *United States v. Albers*, 93 F.3d 1469, 1487 (10th Cir.1996).

### A. Enhancement for Degree of Injury

█ Defendant asserts that the district court's decision to apply the five-level enhancement "relies totally on the aspect of likely permanency of [J.P. Brown's] blindness," and is based "on Dr. Sramek's state-

ment prepared by Agent Swenson that it was unlikely that [Brown's] sight would return as compared to Dr. Sramek's sworn statement that it is possible [Brown's] sight could have returned." Aplt. Br. at 10–11. We disagree.

As we understand the district court's comments, it considered both statements of Dr. Sramek and did not rely exclusively on what the doctor told Swenson. Guideline § 2A2.2(b)(3) provides that the offense level should be increased four levels if the victim suffered "Serious Bodily Injury," and six levels if the victim suffered "Permanent or Life–Threatening Bodily Injury." Section 2A2.2(b)(3)(E) instructs the court to increase the offense level by five levels if the degree of injury is somewhere in between the two categories. The Application Notes to Guideline § 1B1.1 define "Serious Bodily Injury" as "injury involving extreme physical pain or *the protracted impairment of a function of a bodily* member, *organ,* or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1, cmt. n.(L) (emphasis added). "Permanent or life-threatening bodily injury" is defined as "injury involving a substantial risk of death; *loss or substantial impairment of the function of a bodily* member, *organ,* or mental faculty *that is likely to be permanent;* or an obvious disfigurement that is likely to be permanent." *Id.* cmt. n.(J) (emphasis added).

Here, Dr. Sramek's affidavit indicates that the injury to J.P. Brown's eye was sufficiently severe that his loss of vision might be permanent. This by itself would support a finding that Brown's injury could best be described as between the two categories of "Serious Bodily Injury" (protracted impairment) and "Permanent or Life–Threatening Bodily Injury" (loss that is likely to be permanent). Accord-

ingly, the district court did not clearly err in finding that a five-level increase was appropriate.

### B. Enhancement for the Use of Shod Feet

 United States Sentencing Guideline § 2A2.2(b)(2)(B) provides for a four-level increase in offense level when a dangerous weapon is used in the assault. The district court applied this enhancement on the ground that Defendant kicked J.P. Brown with shod feet. Defendant does not argue that shod feet do not qualify as a dangerous weapon, or that he was not wearing boots at the time of the assault (indeed, he admitted to Agent Swenson that he had been wearing steel-toed boots). Rather, he contends that the government failed to establish that he kicked Brown.

Defendant points out that the two individuals who said that he had kicked J.P. Brown—Duran and Brown himself—had been drinking prior to the incident, and that Brown's recollection of the assault may have been altered by the pain medications he was taking at the time he was interviewed by Swenson. Defendant also mentions that no blood was found on his boots. In addition, he contends that the enhancement was improper because Sramek could not definitely determine whether Brown's injuries were caused by kicking with boots.

We hold that the district court did not clearly err in finding that Defendant kicked the victim with shod feet. The court could find Duran and J.P. Brown to be credible, reliable witnesses despite their intoxication at the time of the assault. And the hospital staff informed Swenson that Brown's ability to recount the events would not be affected by the medication he was taking. As for the DNA test of the boots, the district court could properly give the results of the test little weight, given that Defendant had worn the boots every day for two months between the time of the assault and the time of the test.

Finally, we reject Defendant's argument that the enhancement was improper because it cannot be determined whether J.P. Brown's injuries were caused by kicking with shod feet. An enhancement for the use of a dangerous weapon is appropriate even if specific injuries cannot be attributed to the use of the dangerous weapon. *See United States v. LeCompte,* 108 F.3d 948, 951 (8th Cir.1997). The evidence supported the district court's finding that Defendant kicked the victim with shod feet. The government was not required to prove that specific injuries suffered by J.P. Brown were caused by the kicking.

The four-level enhancement under U.S.S.G. § 2A2.2(b)(2) was therefore proper.

## V. CONCLUSION

We AFFIRM the judgment of the district court.