**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 21, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSE SALVADOR CHAVEZ,

    Defendant-Appellant.

No. 03-1482
(D. Colo.)
(D.Ct. No. 02-CR-300)

**ORDER ON REMAND FROM THE SUPREME COURT**
**OF THE UNITED STATES**

Before **TACHA**, Chief Circuit Judge, and **PORFILIO** and **BRORBY**, Senior
Circuit Judges.

Appellant Jose Salvador Chavez was found guilty by a jury of one count of

distribution of fifty grams or more of a mixture or substance containing

methamphetamine, one count of distributing a mixture of cocaine, one count of

possession with intent to distribute methamphetamine, and one count of

possession with intent to distribute cocaine, all in violation of 21 U.S.C. § 841.

*See United States v. Chavez*, 98 Fed. Appx. 806, 2004 WL 1157780 at *1 (10th

Cir. May 25, 2004) (unpublished op.) (*Chavez I*), *vacated and remanded, Chavez*

*v. United States*, 125 S. Ct. 1039 (2005) (*Chavez II*).  The district court sentenced

him to 108 months imprisonment on each of the four counts, to run concurrently, after determining Mr. Chavez possessed a firearm in conjunction with his offenses, for the purpose of enhancing his sentence under United States Sentencing Guidelines (U.S.S.G.) § 2D1.1(b)(1) and declining to reduce his sentence for acceptance of responsibility under U.S.S.G. § 3E1.1. *Chavez I,* 2004 WL 1157780 at *2.

Mr. Chavez appealed his four 108-month concurrent sentences based solely on the grounds the district court erred by declining to reduce his sentence for acceptance of responsibility. *Id.* On May 25, 2004, we affirmed his convictions and sentences. *Id.* at **1, 6. Thereafter, the United States Supreme Court decided *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004). In his appeal to the Supreme Court, Mr. Chavez raised an issue different from the acceptance of responsibility issue this court addressed. For the first time, he raised a Sixth Amendment *Blakely* argument, asserting the district court erred in making a factual determination he possessed a firearm in conjunction with his offenses for the purpose of enhancing his sentence under U.S.S.G. § 2D1.1(b)(1). The Supreme Court then decided *United States v. Booker*, 543 U.S. ____, 125 S. Ct. 738 (2005), and thereafter summarily vacated and remanded our decision in Mr. Chavez's case for further consideration in light of *Booker*. *Chavez II*, 125 S.

Ct. at 1039. The parties filed supplemental pleadings on the applicability of *Booker* and related cases and on whether Mr. Chavez abandoned the issue he now raises by failing to previously appeal it to this court. Based on the following discussion, we reinstate our previous Order and Judgment and affirm Mr. Chavez's sentences.

## I. Factual Background

We first recite facts presented to the jury and discussed in our prior decision, as well as evidence concerning the newly-raised firearm enhancement issue which was not addressed in our prior decision. A government informant with whom Mr. Chavez was acquainted told Mr. Chavez his "boss" wanted to purchase large quantities of cocaine and methamphetamine and then asked Mr. Chavez if he could supply them. *Chavez I*, 2004 WL 1157780 at *1. Mr. Chavez told him he could obtain them, and later gave him a methamphetamine sample to give to his "boss." *Id.* The informant set up a meeting between Mr. Chavez and his "boss"—Dave Storm, a special agent with the Drug Enforcement Agency. *Id.* Later, during a recorded conversation, Mr. Chavez agreed to sell Agent Storm five ounces of methamphetamine. *Id.*

A day later, Mr. Chavez, Agent Storm, and the informant met outside Mr.

Chavez's home, during which time their conversations were recorded. *Id.* Mr. Chavez offered to sell Agent Storm two ounces of methamphetamine and two ounces of cocaine. *Id.* Agent Storm saw Mr. Chavez retrieve the drugs from bushes behind his house, after which Agent Storm paid Mr. Chavez $3,400 and left. *Id.*

Later, Mr. Chavez and the informant met at Mr. Chavez's residence, where Mr. Chavez showed him three ounces of methamphetamine, but said he had five ounces of methamphetamine and two ounces of cocaine for sale. *Id.* Later that day, pursuant to a search warrant, agents knocked, announced, and entered Mr. Chavez's home. *Id.* Once arrested and asked where the drugs were, Mr. Chavez denied all knowledge of any drugs but later led agents to the backyard and some trees, where he showed them a sack containing approximately five ounces of methamphetamine and two ounces of cocaine under a tree. *Id.* The drugs were found approximately seventy-five to 100 yards from the house. In the course of their search, agents also found a Beretta 9 mm semi-automatic handgun under a pile of clothes in Mr. Chavez's bedroom. *Id.* At the time of his arrest, Mr. Chavez admitted the room in which the gun was found was his bedroom.

During the trial, Mr. Chavez attempted to rebut the government's evidence

he possessed the gun. He testified the gun was not his, but belonged to an illegal immigrant couple who stayed with him a few months before they were sent back to Mexico. When asked whether he put the gun in his bedroom, he stated, "[i]t wasn't there where I slept exactly because my bed is over in one corner, and *I put it away over there* with some clothes. ... It's there in the corner in there where the clothes are. *That's where I put it*." (Emphasis added.)

After the jury convicted Mr. Chavez of all four drug-related counts, the probation officer prepared the presentence report, recommending a two-level enhancement under U.S.S.G. § 2D1.1 because he possessed a firearm in conjunction with the offenses. Applying various other sentencing factors, the probation officer calculated Mr. Chavez's total offense level at 30 and his criminal history category at III, for a final Guidelines range of 121 to 151 months imprisonment. *Chavez I*, 2004 WL 1157780 at *2. Through counsel, Mr. Chavez objected to the recommendation not to apply a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 and to over-representation of his criminal history, but did not object to the two-level firearm enhancement. *Id.*

At the sentencing hearing, the district court determined the two-level reduction for acceptance of responsibility did not apply. *Id.* Nonetheless, the

district court granted Mr. Chavez a downward departure for over-representation of his criminal history, thereby reducing his criminal history from III to II. *Id.* Despite the government's request for a sentence in the middle of the Guidelines range, the district court applied the bottom of the sentencing range, as requested by Mr. Chavez, for a sentence of 108 months imprisonment on each of the four counts, to run concurrently. *Id.*

## II. Discussion

We begin by discussing the issue of whether Mr. Chavez abandoned or waived the issue he now presents on remand. Mr. Chavez admits he never raised an objection during sentencing on any grounds concerning the firearm enhancement and, similarly, did not raise it as an issue on appeal. However, Mr. Chavez contends he is not precluded from raising the issue now, as the Supreme Court's remand to this court is still part of his direct appeal and because during his appeal to the Supreme Court it decided both *Blakely* and *Booker*, which must now be applied on remand.

The government counters Mr. Chavez waived or abandoned his claim by failing to object to the enhancement at sentencing or on appeal and asserts the fact he raised a *Blakely* Sixth Amendment claim for the first time to the Supreme

Court does not change the status of his claim. In support, it relies on the Eleventh Circuit's decision in *United States v. Dockery*, where that court determined the Supreme Court's remand, in light of *Booker*, did not require it to treat a constitutional challenge not raised in the initial brief as either timely or not abandoned. 401 F.3d 1261, 1262-63 (11th Cir. 2005) (*per curiam*) (relying on *United States v. Ardley*, 242 F.3d 989 (11th Cir. 2001)).[1]

In determining whether Mr. Chavez properly raised the argument for our consideration, we look to the Supreme Court's instructions in *Booker* on when to apply the rule contained therein, where it repeated the principle that "'a new rule

---

[1] We note our resolution of the issue of abandonment or waiver is not fully answered by the Eleventh Circuit's decision in *Dockery*. Not only are we not bound by Eleventh Circuit precedent, but we note this court's approach regarding past remands under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), differed from the Eleventh Circuit's, which previously declined to consider *Apprendi* issues for the first time in supplemental briefings on remand from the Supreme Court. *Compare Ardley*, 242 F.3d at 990 (declining to apply *Apprendi* on remand, even though direct appeal preceded Supreme Court's *Apprendi* decision, and basing its decision on its well-established rule that issues not raised in initial brief are considered abandoned) *with United States v. Jackson*, 240 F.3d 1245, 1247-48 & n.3 (10th Cir. 2001) (addressing *Apprendi* issues for plain error on remand where our disposition of the case on direct appeal, like here, preceded the Supreme Court's *Apprendi* decision). *See also United States v. Carrington*, 301 F.3d 204, 208 (4th Cir. 2002) (addressing remanded *Apprendi* issue not raised in opening brief for plain error); *United States v. Randle*, 304 F.3d 373, 376 (5th Cir. 2002) (same). For these reasons, the Eleventh Circuit's decision in *Dockery* is not completely dispositive of the issue at hand.

for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review *or not yet final*.'" 125 U.S. at 769 (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)) (alteration omitted and emphasis added). The Supreme Court defines "final" to mean "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith*, 479 U.S. at 321 n.6. *See also Johnston v. Cigna Corp.*, 14 F.3d 486, 489 n.4 (10th Cir. 1993). *Booker* also instructs us "to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test." 543 U.S. at ____, 125 S. Ct. at 769.

When addressing a prior *Apprendi* remand where this court's disposition of the direct appeal preceded the Supreme Court's issuance of *Apprendi*, this court retroactively applied *Apprendi*, relying on the Supreme Court's determination "'"a new rule for the conduct of criminal prosecutions," '*Apprendi*,' "is to be applied retroactively to all cases ... pending on direct review or not yet final."'" *Jackson*, 240 F.3d at 1248 n.3 (quoting, in part, *Griffith*, 479 U.S. at 328). Hence, in a similar situation to the one here, we did not consider the issue waived. But in this case, we need not resolve the waiver issue as it will not affect the outcome of this appeal. This is because even if we determine Mr. Chavez did not waive or

abandon his *Blakely* claim he cannot prevail.

Admittedly, Mr. Chavez presents a Sixth Amendment constitutional error argument based on judicially-found facts because the district court found facts supporting the enhancement under U.S.S.G. § 2D1.1(b)(1), which provides for a defendant's offense level to be increased by two levels if a dangerous weapon, including a firearm, was possessed in connection with a drug offense. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005). However, because Mr. Chavez did not previously challenge his enhancement, we review it for plain error. *See United States v. Ambort*, 405 F.3d 1109, 1118 (10th Cir. 2005). Where, as here, the claim is constitutional, we conduct our plain error analysis "'less rigidly'" than nonconstitutional errors. *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005) (quoting *United States v. James*, 257 F.3d 1173, 1182 (10th Cir. 2001)).

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F.3d at 732 (quotation marks and citation omitted). Applying *Booker*, the first two factors in our plain error analysis are easily resolved because the district court clearly

committed an error when it determined the facts supporting the enhancement, and the error is plain. *Id.*

However, in determining the third factor on whether the error affected substantial rights, the burden is on Mr. Chavez to show the error is prejudicial; *i.e.*, the error "'must have affected the outcome of the district court proceedings.'" *Ambort*, 405 F.3d at 1118 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). In meeting this burden, he must show "'a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" *Id.* (quotation marks and citations omitted).

This circuit has announced at least two ways a defendant can meet this burden, by either: 1) showing a reasonable probability a jury applying a reasonable doubt standard would not have found the same material facts a judge found by a preponderance of the evidence; or 2) demonstrating a reasonable probability that, under the specific facts of the case as analyzed under the sentencing factors in 18 U.S.C. § 3553(a), the district court would reasonably impose a sentence outside the Guidelines range. *See Dazey*, 403 F.3d at 1175.

Mr. Chavez fails to meet his burden under either scenario. First,

overwhelming evidence established he possessed the gun in conjunction with his drug dealings. Substantial evidence was offered, including tape recordings of Mr. Chavez's drug dealings, to establish his distribution of drugs from his home, where the gun was found. Furthermore, he admitted he placed the gun in a pile of clothes in his bedroom, and it is significant to note the gun was found on the same day he transacted drugs and then ultimately lead the police to his stash of drugs only seventy-five to 100 yards from his house. While Mr. Chavez claimed the gun belonged to others, he nevertheless admitted he placed it in his clothes in the room where he slept and, thereby, admittedly possessed it. Based on the overwhelming evidence in the record supporting the enhancement, Mr. Chavez fails to show a reasonable probability a jury evaluating the same evidence under a reasonable doubt standard would not have found the same material facts as found by the district court. Accordingly, he fails, under the first scenario, to establish his substantial rights were violated by the district court's mandatory enhancement of his offense level.

In addition, under the second scenario, Mr. Chavez has not demonstrated a reasonable probability that, under the specific facts of his case as analyzed under the sentencing factors in 18 U.S.C. § 3553(a), the district court would reasonably impose a sentence outside the Guidelines range. *See Dazey*, 403 F.3d at 1175 &

n.5.  In so doing, we recognize the Supreme Court, in *Booker,* held the Guidelines

are now only advisory.  543 U.S. at ____, 125 S. Ct. at 768-69.  Thus, we

determine whether there is a "'reasonable probability that if the district judge had

not thought himself bound by the mandatory Guidelines to sentence in accordance

with ... judge-found, preponderance-of-the-evidence facts,'" he might have

determined a lower sentence should be imposed.  *See Ambort*, 405 F.3d at 1120

(quoting *Dazey,* 403 F.3d at 1177).  In *Dazey*, we explained a defendant might

make such a showing "if during sentencing the district court expressed its view

that the defendant's conduct, based on the record, did not warrant the minimum

Guidelines sentence."  403 F.3d at 1175.

In this case, nothing in the record indicates the district court would not

impose the firearm enhancement under an advisory, rather than a mandatory,

sentencing scheme or that it preferred to give Mr. Chavez a sentence lower than

within the Guidelines range.  While it declined the government's request for a

sentence in the middle of the Guidelines range and, instead, sentenced him at the

bottom of the sentencing range, it did not express a view Mr. Chavez's conduct

did not warrant the minimum Guidelines sentence.  *Id.*  On remand, Mr. Chavez

summarily suggests:

> Because the court sentenced Mr. Chavez to the minimum amount
> prescribed by law, it cannot be said with any degree of certainty that

if given the opportunity to impose a shorter sentence, the court would not do so.  To the contrary, it is more likely that, at the very least, the court would have sentenced Mr. Chavez to a period of incarceration less than the maximum prescribed by the applicable offense level.

This perfunctory argument, with nothing more to establish the district court would have imposed a lesser sentence under the advisory Guidelines, is insufficient for the purposes of this remand.  Under these circumstances, Mr. Chavez has failed to establish a reasonable probability the district court would have imposed a lower sentence if it had not been under pre-*Booker* mandatory constraints.  Because Mr. Chavez fails to meet his burden with respect to the third prong, it is unnecessary for us to address the last prong, given all four prongs must be met for successful plain error resolution.

### III. Conclusion

For the reasons set forth above, we **REINSTATE** our previous Order and Judgment in this case and **AFFIRM**, once again, Mr. Chavez's sentences after our reconsideration in light of *Booker*, pursuant to the Supreme Court's mandate.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

-13-

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 25 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSE SALVADOR CHAVEZ,

    Defendant-Appellant.

No. 03-1482
(D. Colo.)
(D.Ct. No. 02-CR-300)

## ORDER AND JUDGMENT[*]

Before **TACHA**, Chief Circuit Judge, and **PORFILIO** and **BRORBY**, Senior
Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Appellant Jose Salvador Chavez, a federal prisoner represented by counsel, appeals his four 108-month concurrent sentences for one count of distribution of fifty grams or more of a mixture or substance containing methamphetamine, one count of distributing a mixture of cocaine, one count of possession with intent to distribute methamphetamine, and one count of possession with intent to distribute cocaine, all in violation of 21 U.S.C. § 841. He asserts the district court erred by declining to reduce his sentences for acceptance of responsibility under United States Sentencing Guideline (U.S.S.G.) §3E1.1. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and affirm the district court's sentences.

## I. Factual Background

Evidence supporting the following facts was introduced at trial and is not in dispute on appeal. A government informant, with whom Mr. Chavez was acquainted, told Mr. Chavez his "boss" wanted to purchase large quantities of cocaine and methamphetamine and then asked Mr. Chavez if he could supply them. Mr. Chavez told him he could obtain them, and later gave him a methamphetamine sample to give to his "boss." The informant set up a meeting between Mr. Chavez and his "boss" – Dave Storm, a special agent with the Drug Enforcement Agency. Later, during a recorded conversation, Mr. Chavez agreed

-2-

to sell Agent Storm five ounces of methamphetamine.

A day later, Mr. Chavez, Agent Storm, and the informant met outside Mr. Chavez's home, during which time their conversations were recorded. Mr. Chavez offered to sell Agent Storm two ounces of methamphetamine and two ounces of cocaine. Agent Storm saw Mr. Chavez retrieve the drugs from bushes behind his house, after which Agent Storm paid Mr. Chavez $3,400 and left.

Later, Mr. Chavez and the informant met at Mr. Chavez's residence, where Mr. Chavez showed him three ounces of methamphetamine, but said he had five ounces of methamphetamine and two ounces of cocaine for sale. Pursuant to a search warrant, agents then arrested Mr. Chavez and searched his residence. When one agent asked Mr. Chavez where the drugs were, he denied all knowledge of any drugs. Later, the agent told Mr. Chavez if he would tell them where the drugs were, the search would go much quicker, and Mr. Chavez again denied knowing anything. About fifteen minutes later, after the same agent left the room, Mr. Chavez asked to speak with him and told the agent he would show him the location of some drugs. Mr. Chavez then led agents to the backyard and some trees where he showed them a sack containing approximately five ounces of methamphetamine and two ounces of cocaine under a tree. In the course of their

search, agents also found a Beretta 9mm semi-automatic hand gun under a pile of clothes in Mr. Chavez's bedroom. During the trial, Mr. Chavez raised an entrapment defense, which the jury rejected when it convicted Mr. Chavez of all four drug-related counts in violation of 21 U.S.C. § 841.

II. Presentence Report, Objection Thereto, and Sentencing

In preparing the presentence report, the probation officer determined a downward adjustment for acceptance of responsibility under §3E1.1 did not apply, stating:

> In this case, the probation officer is not aware of any pre-trial statements or conduct by the defendant that would support a determination that he accepted responsibility for the crimes of conviction. It does not appear that the defendant "clearly" has demonstrated acceptance of responsibility.

In so concluding, she noted that in rare situations a defendant may clearly demonstrate acceptance of responsibility even though he exercises his constitutional right to trial, but that in such instances, a determination of acceptance of responsibility will be based primarily on pretrial statements and conduct. The probation officer also acknowledged the government's assertion no reduction under U.S.S.G. §3E1.1 should apply based on Mr. Chavez's testimony at trial that the informant pushed him into selling the drugs; nevertheless, the probation officer indicated she did not hear such testimony, noting it "may be an

issue that the court may wish to address at sentencing."Applying various other sentencing factors, the probation officer calculated Mr. Chavez's total offense level at 30 and his criminal history category at III, for a final guideline range of 121-151 months imprisonment.

Through counsel, Mr. Chavez objected to the recommendation not to apply a two-level reduction for acceptance of responsibility under U.S.S.G. §3E1.1. In response, the probation officer indicated the reduction was not applicable given Mr. Chavez's pretrial conduct in initially denying he knew anything about the drugs, and the fact that providing information on the whereabouts of the drugs is not the same as Mr. Chavez's accepting responsibility for distributing or possessing them with the intent to distribute them.

In addressing the issue at the sentencing hearing, the district court determined the two-level reduction for acceptance of responsibility did not apply. Nonetheless, the district court granted Mr. Chavez a downward departure for over-representation of his criminal history, thereby reducing his criminal history from III to II. It then applied the bottom of the sentencing range of 108-135 months, for a sentence of 108 months imprisonment on each of the four counts, to run concurrently.

III. Discussion

On appeal, Mr. Chavez renews his Sentencing Guideline objection concerning the district court's failure to reduce his sentence under U.S.S.G. §3E1.1 for acceptance of responsibility. Specifically, Mr. Chavez contends the district court erred in not considering: 1) the fact he was "cooperative and helpful" when agents searched his residence, leading them to the narcotics under the tree, and 2) his acknowledgment of wrongful conduct at trial when he admitted a) previously using drugs and receiving a prior drug possession offense; and b) selling the drugs, not only because he felt "pushed," but because he wanted the money. Mr. Chavez asserts that instead of considering these criteria, the district court based its decision not to apply §3E1.1 for acceptance of responsibility solely on Mr. Chavez's defense of entrapment. Mr. Chavez contends the district court is precluded from relying solely on Mr. Chavez's entrapment defense but must consider his pretrial conduct in making the determination and make express findings regarding that conduct.

The government disagrees and contends the district court did assess Mr. Chavez's pretrial conduct in which he initially denied any knowledge of the drugs. The government also points out that at trial Mr. Chavez testified inconsistently as to whether he worked with one or two suppliers and denied

-6-

possessing the gun found under his clothes, claiming a prior occupant left it. It also claims Mr. Chavez's testimony he sold the drugs because he felt pressured or "pushed" in support of his entrapment theory, is not credible given his other testimony he engaged in the criminal conduct for money and to keep the informant from getting into trouble with his "boss." It also claims Mr. Chavez never showed remorse, indicated he was sorry for what he did, or mentioned he understood the magnitude of his actions. Finally, it points out Mr. Chavez refused to stipulate to any facts prior to trial, did not truthfully testify at trial, and like the defendant in *United States v. James*, 257 F.3d 1173, 1185 (10th Cir. 2001), *cert. denied*, 534 U.S. 1106 (2002), "put the government to the task of proving every element, every fact, every videotape and audiotape, every chemical composition and every geographic detail." For these reasons, the government suggests the district court properly denied Mr. Chavez' request for a sentence reduction under U.S.S.G. §3E1.1.

Section 3E1.1(a) directs the sentencing court to "decrease the offense level by 2 levels" if "the defendant clearly demonstrates acceptance of responsibility for his offense." *See* U.S.S.G. §3E1.1(a). Acceptance of responsibility is a factual question and our review of the court's determination is limited to clear error. *See United States v. Spedalieri*, 910 F.2d 707, 712 (10th Cir. 1990). We

review the district court's legal conclusions under the Sentencing Guidelines *de novo*, "affording great deference to the district court's application of the Guidelines to the facts." *United States v. Eaton*, 260 F.3d 1232, 1237 (10th Cir. 2001). The defendant has the burden of proving by a preponderance of the evidence he accepted responsibility. *See Spedalieri*, 910 F.2d at 712. We have recognized the district court is "in a better position than the appellate court to weigh the defendant's sincerity of remorse and contrition." *United States v. Ochoa-Fabian*, 935 F.2d 1139, 1143 (10th Cir. 1991). Thus, the district court "is in a unique position to evaluate a defendant's acceptance of responsibility," and its determination "is entitled to great deference on review." U.S.S.G. §3E1.1, cmt. n.5.

In applying this standard of review, we recognize U.S.S.G. §3E1.1 generally does not apply in instances, like here, where a defendant elects to go to trial. Specifically, the reduction for acceptance of responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. §3E1.1, cmt. n.2. Nevertheless, we also recognize that putting the government to its burden of proof does not automatically preclude consideration of a reduction, where, in rare instances, the

defendant "clearly" demonstrates an acceptance of responsibility for his criminal conduct. *Id.*

Similarly, we have held an assertion of entrapment as a defense does not necessarily bar a defendant from receiving a two-level reduction for acceptance of responsibility so long as the defendant demonstrates an affirmative acceptance of responsibility for his criminal conduct. *See Eaton*, 260 F.3d at 1237; *United States v. Garcia*, 182 F.3d 1165, 1173-74 (10th Cir.), *cert. denied*, 528 U.S. 987 (1999). However, in instances where a defendant goes to trial and asserts an entrapment defense, "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." U.S.S.G. §3E1.1, cmt. n.2. *See also Eaton*, 260 F.3d at 1237. Moreover, we have emphasized that the "simple assertion of the entrapment defense coupled with acknowledgment of the underlying criminal activity" does not mean a defendant is automatically entitled to a two-point reduction for acceptance of responsibility. *Garcia*, 182 F.3d at 1173.

In this case, the same judge who presided over the trial also presided over the sentencing hearing. During the trial, he heard evidence from various witnesses, including Mr. Chavez, and was able to assess the credibility of those

witnesses and weigh Mr. Chavez's sincerity with respect to any remorse or contrition. At the sentencing hearing, both counsel outlined Mr. Chavez's pre-trial conduct, acknowledging he initially denied knowing anything about the drugs, but later directed agents to the drugs. They also recounted Mr. Chavez's testimony he sold the drugs for money and because he felt pushed or badgered into selling the drugs. The probation officer also testified at the sentencing hearing, stating she did not attend Mr. Chavez's trial, but given the pre-trial information, she did not think a reduction for acceptance of responsibility was appropriate.

After listening to counsels' sentencing arguments and the probation officer's testimony, the district court expressly acknowledged Mr. Chavez was not precluded from a reduction for acceptance of responsibility because he went to trial. Nevertheless, it stated:

> [A]s pointed out by [the] Government, *I am to consider principally his pretrial statements and conduct*, but I *also* consider in this case the fact that this was a defense raised and the jury rejected that defense.
>
> And from the evidence that I heard, the defendant did engage in the criminal activity, and I would likewise have concluded that he was not induced improperly to that conduct, but rather had the motivation to make money. Of course, he didn't want to get caught, but once caught, his remorse of being caught or finding an excuse of why he did it rather than admitting that it was his own decision would not allow me to give him the benefit of accepting

responsibility, because indeed he doesn't accept responsibility or wants to blame others' circumstances for why he engaged in the criminal activity.

So I agree with the jury he was not entrapped and he should assume responsibility for his own conduct, which he has not done. Therefore, I think it is appropriate that he not be given the benefit of the two-level reduction under Section 3E1.1.

(Emphasis added.)

While the district court primarily discussed Mr. Chavez's testimony at trial in support of his entrapment defense and motivations for selling drugs, we view the district court's ruling as one not based solely on that testimony, but also based on Mr. Chavez's pretrial conduct. First, the district court expressly recognized its obligation to consider Mr. Chavez's pretrial conduct in making an acceptance of responsibility determination. While the district court did not expressly outline the facts of Mr. Chavez's pretrial conduct, it is clear the district court was aware of that conduct, which Mr. Chavez acknowledged at the sentencing hearing and which included his initial denials of knowledge of any drugs and eventual act of leading agents to the drugs.

Next, in making its determination, it is apparent the district court implicitly rejected Mr. Chavez's counsel's argument that, by eventually leading the agents to the drugs, Mr. Chavez sufficiently met his burden of proving by a

preponderance of the evidence that he "clearly" accepted responsibility for his criminal conduct. *See* U.S.S.G. §3E1.1, cmt. n.2. This, taken together with the district court's express observation Mr. Chavez failed to accept responsibility for his own criminal conduct, is certainly sufficient to determine a reduction for acceptance of responsibility was not warranted.

Thus, contrary to Mr. Chavez's contentions, it is clear the district court did not base its §3E1.1 determination solely or *per se* on the fact Mr. Chavez raised an entrapment defense. Moreover, the district court carefully considered Mr. Chavez's testimony in support of his entrapment defense and his stated reasons for selling the drugs. In addition to Mr. Chavez's testimony he felt induced to sell the drugs, the district court considered his testimony he felt motivated to make money. Under the circumstances, the district court expressly made a factual assessment that Mr. Chavez's real motivation was money, and therefore, his entrapment testimony was merely an attempt to switch the blame to another party and not accept responsibility for his greed or criminal conduct. Thus, the mere fact Mr. Chavez raised the entrapment defense was not the reason the district court denied the §3E1.1 reduction.

Finally, Mr. Chavez contends he admitted the essential elements of each

offense, including the drug weights or quantities, and only went to trial in an effort to raise the entrapment defense; therefore, he claims he should receive an acceptance of responsibility reduction based on his admissions. However, we note Mr. Chavez declined to stipulate to any facts before trial, causing the government to carry its burden of proving the essential elements of guilt, including presentation of expert testimony to establish the type, quantity and quality of the drugs Mr. Chavez sold or possessed, which had nothing to do with his entrapment theory or defense. *See James*, 257 F.3d at 1185. Similarly, while Mr. Chavez admitted at trial to selling or intending to sell the drugs, his admissions came only after he declined to stipulate to such facts and caused the government to first put forth evidence he sold or intended to sell drugs. While this alone may not support the district court's §3E1.1 reduction decision, it is certainly another factor supporting denial of a §3E1.1 reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1, cmt. n. 2.

Given the circumstances of this case, the standard of review we apply, and the deference given to a sentencing judge's evaluation of Mr. Chavez's acceptance of responsibility, we sustain the district court's conclusion a downward reduction for acceptance of responsibility under U.S.S.G. §3E1.1 did not apply in this case.

IV.  Conclusion

For the reasons set forth above, we **AFFIRM** Mr. Chavez's sentences.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge