**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 23, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ARTHUR ARAGON,

    Defendant - Appellant.

No. 23-2135

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:22-CR-00773-MLG-1)**

_____

Justine Fox-Young, Justine Fox-Young P.C., Albuquerque, New Mexico
(Robert J. Gorence, Gorence Law Firm, LLC, Albuquerque, New Mexico, with
her on the brief), for Defendant – Appellant.

James Braun, Assistant U.S. Attorney (Alexander M.M. Uballez, U.S. Attorney,
with him on the brief), Albuquerque, New Mexico, for Plaintiff – Appellee.

_____

Before **PHILLIPS**, **KELLY**, and **FEDERICO**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

    We address the scope of United States Sentencing Guidelines Manual

§ 2K2.1(b)(6)(B). Under that section, the district court added four offense

levels to Arthur Aragon's sentencing-guidelines calculation after concluding

that he had "used or possessed any firearm . . . in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). It did so despite concluding that Aragon did not commit New Mexico felony arson, the proposed "[]other felony offense." *Id.* The district court ruled that Aragon's throwing a Molotov cocktail onto his neighbor's property had the potential to give rise to felony arson and so the enhancement was proper. But this ruling runs afoul of § 2K2.1(b)(6)(B), so we reverse and remand for resentencing without the enhancement.

## BACKGROUND

For years, the Aragons and their next-door neighbors lived peaceably on a residential street in Albuquerque, New Mexico. S.R. bought his home at 3101 Drive around 1970.[1] Then around 1989, S.R. bought the adjacent property at 3105 Drive. S.R. lived at 3105 Drive temporarily, while his mother stayed at 3101 Drive. The home at 3105 Drive is sandwiched between S.R.'s long-term residence at 3101 and the Aragons' home at 3109 Drive. So for the short time that S.R. lived at 3105 Drive, S.R.'s next-door neighbors were Mrs. Aragon and her son, Arthur. When S.R.'s mother died, he moved out of 3105 Drive and back into 3101 Drive. During the pertinent events, S.R. was renting 3105 Drive to A.G. A.G. lived at 3105 Drive for nearly a decade.

Aragon has a long history of substance abuse, mental illness, and felony and misdemeanor convictions. Around early 2022, after his mother died,

---

[1] We use initials for names and use generic street numbers rather than full addresses to protect the victims' privacy.

Aragon became the sole occupant at 3109 Drive. Soon after that, Aragon began accusing S.R. and A.G. of breaking into his house through the skylights and hacking his internet. S.R. testified that he and A.G. endured Aragon's "rampages where [Aragon] would run up to [S.R.'s house at 3105 Drive] and he would rattle the doors and yell and threaten violence" and "would come over and attack us or attack the vehicles that we had parked and he would get in a rage and smashed the fender." R. vol. I, at 51. He also shot at windows with either a BB gun or slingshot, shattering A.G.'s bedroom window facing Aragon's property, and he shot a BB gun at A.G. in a public park. Once, Aragon stopped his car to yell out his window at S.R., "I am going to kill you." *Id*. at 53. He had also told A.G. that he was going to kill him. And it got worse.

From November 2021 through April 11, 2022, Aragon tormented S.R. and A.G. by intermittently throwing Molotov cocktails across the eight-foot concrete box wall separating the backyards of 3105 and 3109 Drive.[2] S.R. estimated that Aragon threw twelve Molotov cocktails during that period. Obviously concerned, S.R. and A.G. began removing dry leaves from the yard each morning and hosing it down at night. Despite filing multiple police reports with the Albuquerque police, S.R. got little help. All he could do was follow the police's advice to install cameras to "try to catch [Aragon] in the act." *Id*. at 54.

---

[2] A Molotov cocktail is an "incendiary" "bomb" or "similar device" under 26 U.S.C. § 5845(f).

On April 11, 2022, the cameras paid off. That morning, A.G. awakened to see a scorched area on the concrete backyard patio at 3105 Drive. The video showed Aragon throwing his Molotov cocktail—a beer bottle filled with gasoline and wicked with a paper towel—over the dividing wall at about 2:30 a.m.[3] On impact, the cocktail burst into a "huge fireball" with a flash of flames reaching nearby pine trees.[4] *Id.* at 58. Though the concrete patio floor and a retaining wall were scorched, neither required repairs, so S.R. suffered no monetary damage. Indeed, S.R. acknowledged that the Molotov cocktail "didn't damage or destroy a building of any kind" and "didn't damage or destroy an occupied structure of any person." *Id.* at 85.

In May 2022, a federal grand jury indicted Aragon on a single count, charging that he had "unlawfully and knowingly possessed a firearm, that is, an explosive and incendiary bomb an [sic] similar device not registered to him in the National Firearms Registration and Transfer Record," "[i]n violation of 26 U.S.C. §§ 5861(d), 5841, 5845(a)(8), and 5871." R. vol. I, at 11. In February 2023, Aragon entered a guilty plea without a written plea agreement. In April 2023, the probation office filed its presentence report, which recommended a

---

[3] Neither party included the video in the record on appeal.

[4] The record and briefing leave us uncertain about the lay of the land. We have the two photos from the backyard at 3105 Drive introduced by the government at the sentencing hearing, but they don't help much. Two other photos are taken from Aragon's backyard at 3109 Drive and show scorching on his side of the wall from an unrelated episode. We cannot tell how far the patio or trees are from the house or each other.

four-offense-level enhancement under § 2K2.1(b)(6)(B), contending that Aragon had "used or possessed any firearm or ammunition in connection with another felony offense; Attempted Negligent Arson."[5] R. vol. II, at 191.

The district court applied the four-level enhancement under § 2K2.1(b)(6)(B). The court reasoned that "[t]here [wa]s no other reason to throw a Molotov cocktail other than to try and start a fire," and so Aragon had used a firearm with "the potential . . . to give rise to a felony offense . . . , this being arson." R. vol. I, at 144. The district court then sentenced Aragon to 46 months' imprisonment, the low end of the Guidelines range. Aragon timely appealed. The four-level increase is the sole issue on appeal. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we reverse and remand.

## DISCUSSION

"We review the district court's legal conclusions under the Sentencing Guidelines de novo and its findings of fact for clear error." *United States v. Cifuentes-Lopez*, 40 F.4th 1215, 1218 (10th Cir. 2022). Aragon accepts the facts and challenges only the court's application of the § 2K2.1(b)(6)(B) enhancement, so our entire review is de novo.

---

[5] On appeal, the government does not defend this (seemingly self-contradictory) "Attempted Negligent Arson" finding, and the district court rejected it and negligent arson in its ruling. R. vol. II, at 191.

The present appeal implicates New Mexico's arson statute, which provides in relevant part as follows:

> A.　Arson consists of a person maliciously or willfully starting a fire or causing an explosion with the purpose of destroying or damaging:
>
> > (1)　a building, occupied structure or property of another person;
> > (2)　a bridge, utility line, fence, or sign . . . .
>
> . . . .
>
> D.　Whoever commits arson when the damage is over five hundred dollars ($500) but not more than two thousand five hundred dollars ($2,500) is guilty of a fourth degree felony.

N.M. Stat. Ann. § 30-17-5.[6]

The district court held a sentencing hearing at which S.R., A.G., and an ATF agent testified. In its sentencing memorandum, the government contended that the four-level enhancement applied because "[h]ere, it was reasonably foreseeable that the defendant's act of *using* a Molotov cocktail *could have resulted* in arson which is a felony offense." R. vol. II, at 222 (emphases

---

[6] The government does not argue that negligent arson occurred, probably because Aragon's conduct does not match the elements of N.M. Stat. Ann. § 30-17-5(G):

> Negligent arson consists of a person recklessly starting a fire or causing an explosion, whether on the person's property or the property of another person, and thereby directly:
> > (1)　causing the death or bodily injury of another person; or
> > (2)　damaging or destroying a building or occupied structure of another person.

added). Similarly, at the sentencing hearing, the government argued that what mattered was "whether or not the Molotov cocktail *had the potential* to facilitate the arson in this case." R. vol. I, at 129 (emphasis added).

Aragon contended that the § 2K2.1(b)(6)(B) enhancement did not apply absent "another felony offense" having occurred. He pointed out that the government could not show more than $500 of damage, the minimum amount for felony arson.[7]

After hearing the witnesses and the parties' arguments, the district court took a short recess. On returning, adopting the government's understanding of § 2K2.1(b)(6)(B), the court stated that the four-level enhancement applies "when the firearm is *used in a way* that facilitates or *has the potential* of facilitating a felony offense." *Id.* at 143 (emphases added). The court then applied the four-offense-level enhancement with these few words: "There is no other reason to throw a Molotov cocktail other than to try to start a fire. So I do think it has the potential for it to give rise to a felony offense in that case, this being arson." *Id.* at 144. Like the government, the court focused on Aragon's *use* of the Molotov cocktail: his throwing it over the wall and causing an explosion.

---

[7] The district court agreed that Aragon did not commit felony arson, and the government does not dispute that ruling on appeal.

In assessing the district court's ruling, we focus on the guideline language at issue (with our bracketed insertions to conform to the parties' usage):

(b)    Specific Offense Characteristics

(6)    If the defendant—

(B) [*prong 1*] used or possessed any firearm or ammunition in connection with another felony offense; or [*prong 2*] possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense.

U.S.S.G. § 2K2.1(b)(6)(B). The guideline differentiates between "used" and "possessed." So too does the guideline commentary at Application Note 14, which clarifies the meaning of "in connection with":

(A)    **In General.**—Subsections (b)(6)(B) and (c)(1) apply if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively.

U.S.S.G. § 2K2.1, cmt. n.14.

Two points are evident when reading § 2K2.1(b)(6)(B) together with this commentary: (1) under prong one, the past tense of the verbs "used" and "possessed" requires a connection between these actions and a committed felony offense, and (2) under both prongs one and two, "used" corresponds to "facilitated," and "possessed" corresponds to "potential of facilitating." As seen below, the case law bears out both propositions.

We review first how § 2K2.1(b)(6)(B) operates and then identify how the district court erred.

## I.    Prong One

### A.    How Prong One Works

Under prong one—as marked by brackets in the quotation above—the government can meet § 2K2.1(b)(6)(B)'s four-level enhancement in two ways.

#### 1.    Used

First, the government can show that a defendant *used* a firearm to facilitate a committed felony offense. *See United States v. Alqahtani*, 71 F.4th 774, 788–89, 790 (10th Cir. 2023) (applying enhancement for defendant's use of a firearm to facilitate New Mexico felony aggravated assault); *United States v. Leib*, 57 F.4th 1122, 1126 (10th Cir. 2023) (applying enhancement for defendant's use of a firearm to facilitate New Mexico felony shooting into a dwelling); *United States v. Warren*, 240 F. App'x 809, 811–12 (10th Cir. 2007) (unpublished) (applying enhancement for defendant's use of a firearm to facilitate feloniously pointing a firearm at a person in violation of Oklahoma law).

#### 2.    Possessed

Second, the government can show that a defendant *possessed* a firearm for its potential in facilitating a committed felony offense—but, importantly, not for facilitating a potential felony offense. This part applies when a defendant possesses and keeps ready a firearm in case he might later choose to

9

use it in facilitating the other felony offense. But again, the other felony offense must be actual and committed, not a mere potential felony offense. *See, e.g.*, *United States v. Brown*, 85 F.4th 1291, 1299–1300 (10th Cir. 2023) (applying enhancement for possession of firearm potentially facilitating felony possession of a stolen vehicle); *United States v. Sanchez*, 22 F.4th 940, 941–42 (10th Cir. 2022) (applying enhancement because possession of firearm in stolen vehicle "had the potential to facilitate his possession of the stolen vehicle" by its potential use in intimidating anyone who might seek to interfere with continued possession of the stolen vehicle); *United States v. Griffith*, 928 F.3d 855, 873–74 (10th Cir. 2019) (applying enhancement for defendant's possession, but not use, of a firearm during a drug transaction); *United States v. Basnett*, 735 F.3d 1255, 1259–60 (10th Cir. 2013) (applying the enhancement after determining the defendant "had kept the guns in connection with his concealment of stolen property" because the firearms had the potential to facilitate that felony offense); *United States v. Justice*, 679 F.3d 1251, 1254–55 (10th Cir. 2012) (applying the enhancement after determining that defendant's possession of firearms potentially facilitated his felony drug possession by "emboldening" him to commit the offense); *United States v. Kitchell*, 653 F.3d 1206, 1225–26 (10th Cir. 2011) (applying enhancement for defendant's possession of firearms to potentially facilitate the felony "offense of transporting funds intended for use in a drug transaction"); *United States v. Cunningham*, 330 F. App'x 762, 765 (10th Cir. 2009) (unpublished) (applying

10

enhancement for defendant's possession of a firearm to facilitate a kidnapping felony offense); *United States v. Gambino-Zavala*, 539 F.3d 1221, 1230 (10th Cir. 2008) (applying the enhancement for defendant's possession of a shotgun because "the shotgun had the potential to facilitate illegal drug transactions by helping [defendant] protect himself and his drug supply"); *United States v. Brown*, 314 F.3d 1216, 1224 (10th Cir. 2003) (applying the enhancement to the defendant's possession of a firearm as facilitating his continuing felony offense of escape); *United States v. Walters*, 269 F.3d 1207, 1219 (10th Cir. 2001) (applying the enhancement for a defendant's possession of a firearm inside a stolen truck because "the gun had the potential to facilitate [defendant's] unlawful possession of [victim's] stolen truck"); *United States v. Bunner*, 134 F.3d 1000, 1006 (10th Cir. 1998) (applying enhancement for defendant's possession of a firearm that "had, at a minimum, the potential to facilitate [defendant's] drug trafficking offense").

**B.    How the District Court Erred in Applying Prong One**

Despite the government's contrary position on appeal, we read the district court's comments as relying on prong one of § 2K2.1(b)(6)(B), not prong two. The court focused on Aragon's *use* of a firearm because he threw the Molotov cocktail; the court never mentioned or suggested that Aragon was accountable for merely possessing it. The court reasoned that Aragon's using (throwing) a firearm (the Molotov cocktail) had "the potential . . . to give rise to a felony offense" (arson), and so it applied the four-level enhancement.

R. vol. I, at 144. But that application misreads § 2K2.1(b)(6)(B) and Application Note 14.

There are two ways that prong one might apply: (1) the defendant *used* a firearm to facilitate another felony offense, which is to say, the defendant committed the felony by deploying a firearm in some way; or (2) the defendant merely *possessed* a firearm while committing another felony offense because keeping it ready might have proved useful to finish the job, depending on how things went. Either way, prong one contemplates actual and completed felony offenses. It leaves no room for the district court's expansion to "potential" felony offenses.

The district court misinterpreted § 2K2.1(b)(6)(B) as applying "when the firearm is *used in a way* that facilitates or *has the potential* of facilitating a felony offense." R. vol. I, at 143 (emphases added). Contrary to the court's interpretation, the guideline connects *used* to facilitated and connects *possessed* to the potential of facilitating. By passing over "possessed" in the guideline text, the district court impermissibly created a third way to invoke prong one— by showing that Aragon's use (throwing) of the Molotov cocktail had the potential (should the flames have spread to the house) to result in (not facilitate) felony arson. But the guideline doesn't recognize this alternate avenue. The other felony offense allegedly in play here (arson), never occurred. Aragon cannot have used the Molotov cocktail to facilitate a felony offense that

12

he never committed. So the district court's interpretation of § 2K2.1(b)(6)(B) goes beyond the two options contemplated under prong one.

## II. Prong Two

### A. How Prong Two Works

As established above, prong one under § 2K2.1(b)(6)(B) assumes that the defendant has completed another felony offense. Prong two extends the enhancement beyond prong one for felony offenses not yet committed, but for which the defendant had a reasonable belief will occur. It does so in two scenarios: (1) when the defendant possessed a firearm with the knowledge, intent, or reason to believe that he or someone else would later use or possess the firearm to facilitate a future felony offense, or (2) when the defendant transferred a firearm to someone else with the knowledge, intent, or reason to believe that he or someone else would later use or possess the firearm to facilitate a future felony offense. *See* § 2K2.1(b)(6)(B).

### B. How the District Court Erred if It Applied Prong Two

Assuming that the district court even considered prong two, despite not reciting any of its language, the court failed to explain how Aragon had possessed the Molotov cocktail with knowledge, intent, or reason to believe that he himself would use it or possess it to facilitate a future felony offense. The court acknowledged that Aragon did not commit New Mexico felony arson, because the damage (if any) was less than $500. So Aragon could not have used the Molotov cocktail to facilitate an actual felony arson.

13

But under prong two, the enhancement could still apply even if Aragon did not accomplish the felony offense. For instance, if he threw the Molotov cocktail against the house but the house resisted the blaze—because of fire-retardant siding, a lawn-sprinkler system that kicked on just then, or whatever other reason.[8] In these circumstances, the government might well be able to establish that the defendant possessed the Molotov cocktail with intent and reason to believe that he himself would use it to facilitate felony arson. Though thwarted, the defendant would be liable for the four levels under § 2K2.1(b)(6)(B).[9] But Aragon threw his April 11, 2022 Molotov cocktail—like the dozen or so before it—away from the house at the concrete patio where S.R. acknowledged no damage was caused. Those facts wouldn't support the conclusion that Aragon possessed his Molotov cocktails in anticipation of throwing them over the wall with an intent to destroy or damage "a building, occupied structure or property of another person." N.M. Stat. Ann. § 30-17-5(A)(1). So the record does not support the enhancement under prong two on that basis.

This leaves one remaining possibility under § 2K2.1(b)(6)(B). The enhancement might apply if Aragon possessed the Molotov cocktail with the

---

[8] This would not qualify under prong one because no felony arson occurred.

[9] This might qualify too under prong one for the felony offense of attempted arson, depending on proof of the necessary elements.

14

knowledge, intent, or reason to believe he would later possess it in connection with another felony offense (to later possess it to potentially facilitate his intended felony arson). But yet again, the facts presented to the district court do not support this. The facts establish, and the district court's ruling acknowledges, that Aragon only ever used and did not merely possess by storing a Molotov cocktail to potentially facilitate felony arson—for instance by using it to stop people from extinguishing any resulting fire. So even this far-fetched possibility under prong two would fail.

As support for its decision, the district court referenced *United States v. Eaton*, 260 F.3d 1232 (10th Cir. 2001), but only by case name without any discussion. That case lends the district court no support. In *Eaton*, the court enhanced a defendant's sentencing calculation under § 2K2.1(b)(6)(B)'s second prong after receiving evidence that Eaton had sold pipe bombs and smokeless powder to an undercover agent and advised the agent that the best way to blow up a car was to detonate the bombs near the car's gas tank. *Id.* at 1235, 1237. The agent had told Eaton that "the bombs would be used on someone who deserved it." *Id.* at 1235. This was an easy case. After all, Eaton had transferred firearms (the pipe bombs) with sufficient knowledge, intent, or reason to believe that they would be used in another felony offense. *See id.* at 1238. Though the car-bombing was as-yet uncompleted, Eaton had sufficient knowledge of a likely future felony offense to hold him blameworthy for his dangerous manufacture and sale of the pipe bombs. *Id.* Aragon's case differs

from Eaton's because nothing in the record suggests Aragon's knowledge, intent, or reason to believe that his Molotov cocktails would be used or possessed in a future, anticipated felony arson.

At the sentencing hearing, the government had a full shot at providing evidence in support of the enhancement. For prong one of the enhancement to apply, Aragon needed to have used the Molotov cocktail to facilitate an actual felony arson. For prong two to apply, Aragon needed to have possessed a Molotov cocktail with knowledge, intent, or a reasonable belief that he would use it to facilitate felony arson, or that he would later possess it to potentially facilitate felony arson, for instance by interfering with other persons interceding to extinguish the fire. But the facts support neither scenario.

## CONCLUSION

For the reasons given above, we reverse and remand for resentencing without the § 2K2.1(b)(6)(B) enhancement.

16