**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 5, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRANDON LEE WORKMAN,

    Defendant - Appellant.

No. 23-7081
(D.C. No. 6:22-CR-00097-JFH-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BACHARACH**, and **CARSON**, Circuit Judges.
_____

Brandon Lee Workman pled guilty to being a felon in possession of a firearm and a felon in possession of ammunition. At sentencing, the district court found that he had assaulted his girlfriend with a firearm. The court applied a sentencing enhancement under United States Sentencing Guideline ("U.S.S.G.") § 2K2.1(b)(6)(B) for using or possessing a firearm in connection with a felony.

On appeal, Mr. Workman argues it was procedurally unreasonable for the district court to rely on hearsay evidence to enhance the sentence. He contends the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

court (1) legally erred by making him prove the evidence was unreliable and (2) factually erred by finding the hearsay evidence was sufficiently reliable to support the enhancement. Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

Police officers responded to a 911 call reporting a domestic altercation between Mr. Workman and his girlfriend, R.P., at Mr. Workman's trailer. They found a firearm in Mr. Workman's pant leg and unspent ammunition in his pant pocket. They also interviewed R.P. and obtained information about the altercation from a witness. Police later prepared an affidavit to obtain an arrest warrant.

A grand jury indicted Mr. Workman for being a felon in possession of a firearm and a felon in possession of ammunition. He pled guilty to both counts.

### A. *The PSR*

A United States Probation Officer drafted a presentence investigation report ("PSR"). Paragraph 8 of the PSR read:

> According to several witnesses, the defendant assaulted R.P. at the trailer and he had a firearm in his possession. . . . The couple was observed walking from the defendant's trailer to a nearby field. Witnesses lost sight of the couple but reportedly heard a gunshot and were concerned for R.P.'s safety.

ROA, Vol. III at 40 (sentencing transcript).[1]

---

[1] The facts we quote or cite from the PSR do not reveal sensitive information and appear in the publicly-filed sentencing transcript, the parties' publicly-filed briefs, or both.

2

The PSR recounted that (1) police responded to reports of a domestic altercation and found R.P. and Mr. Workman at the trailer; (2) R.P. had a swollen face and shoulder, bruising and scratch marks on her shoulders, arms, and legs, dirt in her hair and inside her ear; and (3) police found a revolver-style pistol in Mr. Workman's pant leg, which was cocked and had one spent round in the cylinder.

Paragraph 12 of the PSR read:

> Deputies interviewed R.P. and several witnesses at the scene. [R.P.] [b]elieve[d] the defendant assaulted her because he was paranoid and thought that she was having an affair. She also suspected their lack of methamphetamine contributed to the fight. R.P. described defendant pushed her several times and struck her with his hands, feet, the firearm, and a rock. He then forced her to the field and asked her where she wanted to be buried. The defendant pointed the pistol at R.P. and fired it. The fired round hit the ground near R.P.'s head.

*Id.* at 41 (sentencing transcript).

The PSR said that agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives interviewed Mr. Workman. During the interview, Mr. Workman said:

- He possessed the firearm but did not fire it at R.P.

- R.P. hit him with a dog chain and he slapped her in response.

- He and R.P. went to a field to look for arrowheads.

- He kept one spent casing in his pistol to avoid accidentally shooting himself.

The PSR recommended a four-level enhancement for "us[ing] or possess[ing] any firearm or ammunition in connection with another felony offense." U.S.S.G.

3

§ 2K2.1(b)(6)(B).[2]  It said Mr. Workman assaulted R.P. when he hit her with his hands and the firearm, led her to a field and threatened to kill her, and fired his gun into the ground near her head.

Mr. Workman objected to paragraphs 8 and 12 and the enhancement recommendation.

## B.  *Sentencing Hearing*

At sentencing, Mr. Workman renewed his objections.  He also denied that he and R.P. "walked together anywhere," that "he fired any shots with the firearm," and that "he attacked her in any kind of way."  ROA, Vol. III at 5; *see also id.* at 6.

The district court told the Government it "obviously ha[d] the burden of proof to those facts to which have been objected."  *Id.* at 6.  When the Government referred to the PSR, Mr. Workman objected that the PSR was hearsay.  *Id.* at 7.  The court responded that "hearsay is admissible at sentencing, but I need more than the presentence report.  I need some evidence to support the statements in the report."  *Id.*  Mr. Workman argued that hearsay is permitted at sentencing only if it "ha[s] sufficient indicia of reliability to support probable accuracy."  *Id.*  The court explained that because Mr. Workman objected, the Government "now ha[d] the

---

[2] U.S.S.G. § 2K2.1(b)(6)(B) provides for a four-level enhancement

> If the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense . . . .

burden of proof to bring forward evidence to address those objections. Not just say it must be true." *Id.* at 9.

To support the PSR's facts, the Government called Probation Officer Hannah Massoth, who wrote the PSR. Mr. Workman objected to her testimony as hearsay. Officer Massoth testified that she prepared the PSR from "the information contained within the discovery," *id.* at 11, including photographs of R.P.'s injuries; the arrest warrant affidavit, which described witness reports; a radio log containing notes on the 911 call; and the police report about R.P.'s interview. The Government sought to introduce these materials.

Mr. Workman objected, arguing that the evidence was hearsay and that it lacked sufficient reliability under *United States v. Padilla*, 793 F. App'x 749, 754-56 (10th Cir. 2019) (unpublished).[3] On recross examination, defense counsel asked Officer Massoth to read a letter that R.P. wrote and mailed to defense counsel three months after his arrest. The letter said that she and Mr. Workman were under the influence of drugs on the day of his arrest and that police officers "wanted [her] to make false statements against him and kept trying to get [her] to file a protection

---

[3] In *Padilla*, we said that "police reports—as a category of evidence—are not inherently reliable," so "sentencing courts must make a case-by-case reliability determination" by "examin[ing] the record, as a whole, to discern whether there is additional evidence to corroborate sufficiently the relevant information that the police report is being offered to establish" or by examining whether "certain features of the police report itself—such as its level of detail, internal consistency, and quality—independently support the probable accuracy of the relevant information contained therein." 793 F. App'x at 757.

order against him even [though] [she] repeatedly told them that [she] did not want to file a protection order against him." ROA, Vol. III at 34. The Government objected to the letter.

The district court admitted the Government's evidence and R.P.'s letter, explaining:

> Well, since neither of you saw fit to call the police officer or [R.P.], who is the center figure, I'm left with documentation that's been provided to the probation office either by the police department or the sheriff's department or other witnesses, including the victim.
>
>  . . .
>
> [S]o far I haven't heard anything to question the reliability of what's been presented. You know, you can [sic] put on all this evidence and kept [sic] that letter out. You can't put that letter in and tell me to ignore the material from the sheriff's department.
>
> I'll hear argument on it. But I haven't heard any reason to find any of this unreliable. And so since hearsay is accepted at a hearing, I'll receive it and then you can argue the legal consequence of it, but you can't have it both ways. . . . [T]here's certainly better evidence, but there's no evidence that this evidence is unreliable.
>
>  . . .
>
> I understand [Mr. Workman's] argument under *Padilla*, and *Padilla* is an evidentiary question, you know to what weight and admissibility. . . . So [Mr. Workman] is arguing Tenth Circuit law and the reliability of a police report.

*Id.* at 29-30.

The district court then overruled Mr. Workman's objections to the "factual statements in paragraphs eight and 12." *Id.* at 42. It found that the paragraph 8 facts—witnesses said Mr. Workman assaulted R.P., they saw him walk R.P. to a

6

nearby field, and they heard a gunshot—were "established by the witness statements from the sheriff's department." *Id.* at 40. It also found that the paragraph 12 facts—R.P. said that Mr. Workman hit her, forced her to the field, and pointed and fired the gun at her—were established from her interview with the sheriff's office and witness statements at the scene. *Id.* at 41-42. The 911 radio log and arrest warrant affidavit described the witness statements, and the police report described R.P.'s interview. Suppl. ROA, Vol. I at 31, 34-35.

Mr. Workman renewed his objection to the sentencing enhancement, arguing there was not "sufficient evidence, and certainly not reliable evidence, to show that" he possessed and used a firearm in connection with another felony. ROA, Vol. III at 42.

The district court overruled the objection, concluding:

> I don't think there's any doubt that another felony offense occurred here based upon everything that we've heard and discussed . . . .
>
> But certainly based on that, I acknowledged it's hearsay evidence, but I did find that it was sufficiently reliable based upon contemporaneous witness statements that, in fact, a weapon was used, and that R.P. was assaulted and a weapon was used in that assault. In addition, he fired the weapon.
>
>  . . .
>
> I do find by a preponderance of the evidence that the four-level enhancement . . . is applicable . . . .

*Id.* at 45-47.

The district court sentenced Mr. Workman to 72 months in prison, followed by three years of supervised release.

## II. DISCUSSION

Mr. Workman argues the district court (1) legally erred by imposing the burden on him to show the Government's hearsay evidence was unreliable, Aplt. Br. at 14, 16-17; and (2) factually erred when it found the evidence sufficiently reliable, *id.* at 14-16.[4]  We discern no error.

### A. *Legal Background*

### 1. Procedural Reasonableness

A defendant may challenge a sentence as procedurally or substantively unreasonable. *See Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Gieswein*, 887 F.3d 1054, 1058 (10th Cir. 2018).  A sentence is procedurally unreasonable when the sentencing court improperly calculated the Guidelines range. *See Gall*, 552 U.S. at 51; *United States v. McCrary*, 43 F.4th 1239, 1244 (10th Cir. 2022).  Because Mr. Workman contests just the Guidelines enhancement, only procedural reasonableness is at issue in this appeal.

"[T]he overarching standard for our review of the procedural reasonableness of the court's sentence is abuse of discretion . . . ."  *United States v. Nkome*, 987 F.3d 1262, 1268 (10th Cir. 2021); *see Gall*, 552 U.S. at 56.  Under that standard,

---

[4] Apart from contesting whether the hearsay evidence was sufficiently reliable, Mr. Workman does not separately challenge the district court's finding that a preponderance of the evidence supported the sentencing enhancement.

"[w]e review the district court's legal conclusions under the Sentencing Guidelines de novo" and its "findings of fact for clear error." *United States v. Aragon*, 112 F.4th 1293, 1296 (10th Cir. 2024) (quotations omitted). The clear error standard applies to "a district court's assessment of the reliability of evidence supporting a sentencing enhancement." *United States v. Martinez*, 824 F.3d 1256, 1261 (10th Cir. 2016); *see also Padilla*, 793 F. App'x at 754-56 (cited for persuasive value under Fed. R. App. P. 32.1(A) and 10th Cir. R. 32.1).

2. **Sentencing Based on Facts in the PSR**

Federal Rule of Criminal Procedure 32(i)(3) provides:

> At sentencing, the court:
>
> (A) may accept any undisputed portion of the presentence report as a finding of fact;
>
> (B) must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing . . . .

Under this framework, when a defendant objects to a PSR's facts, the government must prove those facts by a preponderance of the evidence. *United States v. McDonald*, 43 F.4th 1090, 1096 (10th Cir. 2022); *United States v. Flonnory*, 630 F.3d 1280, 1285-86 (10th Cir. 2011). The district court must rule on the dispute in a "definite and clear" manner. *United States v. Peña-Hermosillo*, 522 F.3d 1108, 1111 (10th Cir. 2008) (quotations omitted). It may consider hearsay evidence such as a police report so long as it "has sufficient indicia of reliability to support its

9

probable accuracy." U.S.S.G. § 6A1.3(a); *see also United States v. Beaulieu*, 893 F.2d 1177, 1180 (10th Cir. 1990).[5]

## B. *Application*

### 1. **No Legal Error – Burden of Proof**

Mr. Workman argues the district court failed to place the burden on the Government to show its hearsay evidence had sufficient "indicia of reliability" and instead erred by requiring him to show "indicia of *unreliability*." Aplt. Br. at 16. He highlights the court's comments that "there's no evidence that this evidence is unreliable," *id.* (quoting ROA, Vol. III at 30), and that it had not "heard any reason to find [that] any of this [is] unreliable," *id.* (quoting ROA, Vol. III at 29). But Mr. Workman selectively takes these quotes out of context. The sentencing record as a whole shows the court placed the burden on the Government.

After Mr. Workman objected to the PSR's facts, the district court told the Government that it "obviously ha[d] the burden of proof to those facts to which have

---

[5] U.S.S.G. § 6A1.3 provides:

> (a) When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

> (b) The court shall resolve disputed sentencing factors at a sentencing hearing in accordance with Rule 32(i), Fed. R. Crim. P.

been objected." ROA, Vol. III at 6. The court further said, "You now [have] the burden of proof to bring forward evidence to address those objections." *Id.* at 9. In response, the Government called Probation Officer Massoth, who prepared the PSR.

Officer Massoth testified about photographs showing R.P.'s injuries, the arrest warrant affidavit describing witness statements, a radio log describing the 911 call, and the police report of R.P.'s interview at the scene. The Government introduced these materials into the record.

The district court found the Government presented hearsay evidence that "was sufficiently reliable based upon contemporaneous witness statements that, in fact, a weapon was used, and that R.P. was assaulted and a weapon was used in that assault." *Id.* at 45. Based on the foregoing, we conclude the court placed the burden of proof on the Government.

Mr. Workman complains that the district court did not mention R.P.'s assertions in her letter that she had been under the influence of drugs and that police encouraged her to lie. Aplt. Br. at 16. But just because the court did not mention these assertions does not mean the court imposed the burden on Mr. Workman to show the Government's evidence was unreliable.

When read in context, the district court's statements at the end of the sentencing hearing that it had not received "evidence" or "any reason" to show the Government's hearsay evidence "is unreliable" are consistent with its having recognized the Government had the burden to establish the hearsay evidence was sufficiently reliable. ROA, Vol. III at 29-30.

11

2. **No Factual Error – Sufficient Reliability**

The district court found the Government's evidence was sufficiently reliable. *Id.* It determined that the Government had shown by a preponderance of the evidence that Mr. Workman "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The court therefore imposed a four-level enhancement.

We review any challenge Mr. Workman makes to the district court's sufficient reliability finding for clear error. *Martinez*, 824 F.3d at 1261; *see* Aplt. Br. 15-16. We discern none. The pictures of R.P.'s injuries, the arrest warrant affidavit, the 911 radio log, and the police report all corroborated that Mr. Workman assaulted R.P. with his firearm. *See United States v. Anderson*, 62 F.4th 1260, 1269-71 (10th Cir. 2023) (concluding the district court did not err when it found that an unadmitted police report was sufficiently reliable because other evidence corroborated it).[6]

---

[6] At sentencing, the Government explained that assault with a dangerous weapon with intent to cause bodily harm in Indian country is a federal felony, and that domestic assault and battery is an Oklahoma felony if the defendant has committed a prior domestic abuse offense, which Mr. Workman had done. ROA, Vol. III at 44; *see* 18 U.S.C. §§ 113(a)(3), 1152(a), 1153(a); Oka. Stat. tit. 21, §§ 645, 644(C). Mr. Workman has not disputed these points.

## III.  **CONCLUSION**

We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge