**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 16, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TREYSON DARON REED,

    Defendant - Appellant.

No. 24-6020
(D.C. No. 5:21-CR-00243-SLP-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH** and **BALDOCK**, Circuit Judges, and **LUCERO**, Senior Circuit
Judge.
_____

Defendant Treyson Reed was convicted of two counts of assaulting a federal

officer causing bodily injury, in violation of 18 U.S.C. § 111(a)(1) and (b) and was

sentenced to 120 months' imprisonment on each count, with the sentences to run

concurrently.  Mr. Reed now appeals his convictions and sentence.  Exercising

jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the judgment of the district

court.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

I

On May 6, 2021, Mr. Reed was confined at the United States Bureau of Prisons' Federal Transfer Center (FTC) in Oklahoma City, Oklahoma. Shortly before dinner that day, Mr. Reed began fighting with his cellmate near the back of their cell. S.R., a correctional officer at FTC observed the two men fighting. According to S.R., Mr. Reed had his cellmate in a headlock with one hand and was using his other hand to strike his cellmate with a closed fist. The cellmate in turn was attempting to strike Mr. Reed with one hand. S.R. ordered the two men to stop fighting, but they ignored her. S.R. therefore called for assistance.

Two officers responded to the call: M.W., who also worked as a correctional officer at FTC, and Dustin Cogburn, who was an acting unit manager at FTC. Mr. Cogburn, concerned for the safety of Mr. Reed's cellmate, instructed S.R. to open the cell door.

After S.R. opened the cell door, Mr. Cogburn entered the cell first and "grabbed ahold of [Mr.] Reed to pull him off" of his cellmate. R. vol. 4 at 67. Mr. Reed refused to comply with orders to place his hands behind his back. Mr. Cogburn grabbed Mr. Reed "in a cross-body fashion" with his "arms . . . interlocked around Mr. Reed's body" and began trying to "extract[] him from the cell." *Id.* at 56, 63.

M.W. entered the cell after Mr. Cogburn and instructed Mr. Reed's cellmate "to get on the ground, which . . . he did." *Id.* at 87. M.W. put his hand on the back of Mr. Reed's cellmate "and outstretched [his] right leg in front of" the cellmate's

2

"head on the ground to make sure he didn't move." *Id.* After doing so, M.W. looked up and Mr. Reed kicked him in the area of his right thigh and knee. Mr. Reed then asked M.W. "if it hurt." *Id.* at 88.

S.R. assisted Mr. Cogburn in attempting to restrain Mr. Reed and remove him from the cell. As Mr. Cogburn and S.R. were removing Mr. Reed from the cell, S.R. "turned around to ask [M.W.] . . . if he was okay." *Id.* at 68. When S.R. turned back around, Mr. Reed's right elbow "struck [her] in the face." *Id.* The blow to S.R.'s face resulted in bruising and swelling around one eye, broken blood vessels in the top of the same eye, and a "basic concussion" that caused S.R. "quite a headache for a few days, and then a lingering smaller headache for a couple of months." *Id.* at 69.

The day after the incident, M.W. sought medical treatment for his right knee, which had swollen from being kicked by Mr. Reed. M.W. was diagnosed with a sprain and strain to his right inner thigh. M.W. was forced to miss work due to the injury and was also required to be on work restrictions for an extended period.

II

A federal grand jury indicted Mr. Reed on two counts of assaulting a federal officer causing bodily injury, in violation of 18 U.S.C. § 111(a)(1) and (b). The case proceeded to a bench trial in November 2022. Mr. Reed was convicted of both counts.

At the sentencing hearing, the district court calculated a total offense level of 27, a criminal history score of eight, a criminal history category of IV, and a resulting guideline sentencing range of 100 to 125 months. After considering the factors

3

outlined in 18 U.S.C. § 3553(a), the district court sentenced Mr. Reed to 120 months' imprisonment on each count, with the sentences to run concurrently. The district court also imposed a three-year term of supervised release.

## III

Mr. Reed raises two issues on appeal. First, he argues that the evidence presented at trial was insufficient to support his convictions. Second, he challenges the procedural reasonableness of his sentence, arguing that the district court erred in imposing a six-level enhancement pursuant to U.S.S.G. § 3A1.2(c)(2) for each offense of conviction. For the reasons that follow, we conclude that both of these issues lack merit.

## A

"We review de novo whether the government presented sufficient evidence to support a conviction." *United States v. Flechs*, 98 F.4th 1235, 1242 (10th Cir. 2024) (internal quotation marks omitted). "In so doing, we view the facts in evidence in the lights most favorable to the government." *Id.* at 1242–43 (internal quotation marks omitted). "While the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *Id.* at 1243 (internal quotation marks omitted). This "restrictive standard of review . . . provides us with very little leeway." *Id.* (internal quotation marks omitted).

Mr. Reed was convicted of assaulting two federal employees in violation of 18 U.S.C. § 111(a)(1) and (b).  Those statutory provisions provide, in relevant part, as follows:

> (a) In general.—Whoever—
> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties . . . shall, where the acts in violation of this section  . . . involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.
>
> (b) Enhanced penalty.--Whoever, in the commission of any acts described in subsection (a), . . . inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111(a)(1), (b).

Mr. Reed argues that the evidence presented at trial was insufficient to establish that he acted with the intent to threaten or inflict injury upon either of the two officers.  We disagree.  The government's evidence established that Mr. Reed ignored repeated orders to stop fighting and resisted the officers' efforts to restrain him and remove him from his cell.  The government's evidence further established that, shortly after the officers entered his cell, Mr. Reed kicked M.W. in the right leg and then looked directly at him and asked "if it hurt."  R. vol. 4 at 88.  The government's evidence also established that Mr. Reed elbowed S.R. in the face as he was being removed from his cell. Although there is no direct evidence of Mr. Reed's intent, we conclude it was entirely reasonable for the district court to infer from all of this evidence that Mr. Reed knowingly made physical contact with both M.W. and S.R. and

intended the natural and probable consequences of his acts, i.e., to physically injure both officers. *See United States v. Feola*, 420 U.S. 671, 686 (1975) (holding "that in order to incur criminal liability under § 111 an actor must entertain merely the criminal intent to do the acts therein specified"); *United States v. Wolfname*, 835 F.3d 1214, 1218 (10th Cir. 2016) (discussing elements of § 111(a)).

B

"[T]he overarching standard for our review of the procedural reasonableness of the court's sentence is abuse of discretion . . . ." *United States v. Nkome*, 987 F.3d 1262, 1268 (10th Cir. 2021). Under that standard, "[w]e review the district court's legal conclusions under the Sentencing Guidelines de novo and its "findings of fact for clear error." *United States v. Aragon*, 112 F.4th 1293, 1296 (10th Cir. 2024) (internal quotation marks omitted).

At issue here is the district court's application of U.S.S.G. § 3A1.2(c)(2) in calculating Mr. Reed's total offense level and resulting guidelines sentencing range. Section 3A1.2(c)(2) provides, in relevant part, as follows:

> If, in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a prison official, assaulted such official while the defendant . . . was in the custody or control of a prison or other correctional facility, increase [the offense level] by 6 levels.

U.S.S.G. § 3A1.2(c)(2). "Serious bodily injury" is defined under the Sentencing Guidelines as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental

6

faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation."[1]  U.S.S.G. § 1B1.1 cmt. 1(M).

Application Note 4 to § 3A1.2 provides, in relevant part, that "[s]ubsection (c) applies in circumstances tantamount to aggravated assault . . . against a prison official, while the defendant . . . was in the custody or control of a prison or other correctional facility."  *Id.* cmt. 4(A).  Application Note 4 also states that "'[s]ubstantial risk of serious bodily injury' includes any more serious injury that was risked, as well as actual serious bodily injury (or more serious injury) if it occurs."  *Id.* cmt. 4(B).

Mr. Reed argues that § 3A1.2(c)(2) is inapplicable to him because "the facts do not support a finding that [he] 'assaulted' any of the officers—let alone created circumstances tantamount to aggravated assault."  Aplt. Br. at 17 (internal quotation marks omitted).  For the reasons that follow, we reject that argument.

The Sentencing Guidelines do not provide a definition of the terms "assault" or "aggravated assault."  *See United States v. Hampton*, 628 F.3d 654, 660 (4th Cir. 2010).  We therefore must look to the common meaning and common law definitions of the terms.  *Id.*  Notably, the Fourth Circuit has concluded that the common law crimes of "assault" and "battery" are "nearly

---

[1] The Sentencing Guidelines define "[b]odily injury" as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought."  U.S.S.G. § 1B1.1 cmt. 1(B).

synonymous" and that, as a result, "battery of a law enforcement officer was intended to and in fact does satisfy U.S.S.G. § 3A1.2(c)(1)'s assault requirement." *Id.* at 661. We agree with the Fourth Circuit's analysis and also note that the term "aggravated assault" is commonly defined as "[c]riminal assault accompanied by circumstances that make it more severe, such as the intent to commit another crime or the intent to cause serious bodily injury, esp. by using a deadly weapon." Assault, Black's Law Dictionary (12th ed. 2024). We therefore conclude that Application Note 4 simply rephrases the language of § 3A1.2(c)(2) and requires nothing more than an assault, which necessarily includes a completed battery, that created a substantial risk of serious bodily injury to the victim. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) (holding that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it . . . is inconsistent with, or a plainly erroneous reading of, that guideline").

The record in this case supports the district court's conclusion that the requirements of § 3A1.2(c)(2) were satisfied. As we previously concluded, the evidence presented at trial was sufficient to establish beyond a reasonable doubt that Mr. Reed acted knowingly and with the intent to injure both officers. Further, there is no dispute that Mr. Reed made contact with and injured both officers. As for whether Mr. Reed's conduct created a substantial risk of serious bodily injury to the two victims, it is certainly arguable that S.R. in fact suffered a serious bodily injury by sustaining a concussion that

impaired her functioning for an extended period following the incident. But even if we assume that S.R. only sustained "bodily injury" and not "serious bodily injury," we agree with the district court that the circumstances of the case firmly establish that Mr. Reed's conduct created a substantial risk of serious bodily injury to both officers. Given Mr. Reed's physical stature (the district court noted he was "a healthy, 6-foot-3, 190-pound man," R. vol. 4 at 206), it is not difficult to imagine that Mr. Reed's kick could have resulted in much more serious damage to M.W.'s leg or knee. Likewise, it is easy to imagine various scenarios in which Mr. Reed's blow to S.R.'s face would have resulted in her sustaining more serious injuries than she did.

In sum, we conclude the district court did not procedurally err by applying the § 3A1.2(c)(2) enhancements.

### III

The judgment of the district court is affirmed.

Entered for the Court

Carolyn B. McHugh
Circuit Judge